# Exhibit A

Caplight Technologies, Inc.

EMPLOYMENT OFFER LETTER

07/12/2021

Via Email: marc.b.perkins@gmail.com

Dear Marc:

I am pleased to offer you a position with Caplight Technologies, Inc. (the "***Company***") with the title of Director of Marketplace Strategy, commencing on 07/14/2021 (your "***Employment Start Date***"). You will receive an annual salary of $125000, less applicable withholding, which will be paid in accordance with the Company's normal payroll procedures. You should note that the Company reserves the right to modify salaries from time to time as it deems necessary.

In addition to your salary, we will recommend to the Company's Board of Directors at its next regularly scheduled meeting that you receive Restricted Stock Award for 103,730 shares of the Company's common stock at a price determined by the Board of Directors, which will generally be the current fair market value for such shares. Your award shall be held pursuant to the terms and conditions of the Company's equity grant agreements which, among other things, grants the Company a right to terminate your vesting or repurchase any unvested shares at the original purchase price upon the termination of your employment with the Company, You will be required to sign these agreements in order to accept your award. The fair market value per share of the Company's common stock is determined by the Company's Board of Directors in good faith compliance with applicable guidance in order to avoid having the option be treated as deferred compensation under Section 409A of the Internal Revenue Code of 1986, as amended. There is no guarantee that the Internal Revenue Service will agree with this valuation. You should consult with your own tax advisor concerning the tax risks associated with accepting the award.

You should be aware that your employment with the Company is for no specified period and constitutes at-will employment. As a result, you are free to resign at any time, for any reason or for no reason. Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States. Such documentation must be provided to us within three (3) business days of your date of hire, or our employment relationship with you may be terminated.

You agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to the Company.

As a Company employee, you will be expected to abide by Company rules and regulations. You will be specifically required to sign an acknowledgement that you have read and that you understand the Company rules of conduct. You will be expected to sign and comply with the Company's Proprietary Information and Inventions Agreement attached as **Exhibit A**, which requires, among other things, the assignment of your rights to any intellectual property made during your employment at the Company and the nondisclosure of proprietary information.

To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below and return it to me. A duplicate original is enclosed for your records. This letter and the agreement relating to proprietary rights between you and the Company set forth the terms of your employment with the Company and supersede any prior representations or agreements, whether written or oral. This letter may not be modified or amended except by a written agreement, signed by an officer of the Company and by you.

We look forward to working with you!

*[rest of page intentionally left blank]*

**AGREED AND ACCEPTED:**

**Company**

| | |
|---|---|
| Caplight Technologies, Inc. | Marc Perkins |
| Signature: Javier Avalos | Signature: Marc Perkins |
| Printed Name: Javier Avalos | Printed Name: Marc Perkins |
| Title: CEO | Title: |
| Date: Jul 12, 2021 | Date: Jul 12, 2021 |
| Email: javier@caplight.io | Email: marc.b.perkins@gmail.com |
| Address: 548 Market St, PMB 60414, San Francisco CA 94609 | Address: 19 October Hill Road, Woodbridge, CT 06525 |

**EXHIBIT A**

PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT

As a condition of my employment with Caplight Technologies, Inc. and its subsidiaries, affiliates, successors or assigns (collectively, the "***Company***"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paidto me by the Company, I agree to the following terms under this Proprietary Information and Inventions Agreement (this "***Intellectual Property Agreement***"):

**1. Employment**

(a) I understand and acknowledge that my employment with the Company is for an unspecified duration and constitutes "at-will" employment. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice.

(b) I agree that, during the term of my employment with the Company, I will not engagein any other employment, occupation, consulting or other business activity related to the businessin which the Company is now involved or becomes involved during the term of my employment,nor will I engage in any other activities that conflict with my obligations to the Company.

**2. Confidential Information**

(a) **Company Information**. I agree at all times during the term of my employment (my "***Relationship with the Company***") and thereafter to hold in strictest confidence, and not to use except for the benefit of the Company or to disclose to any third party without written authorization of the Board of Directors of the Company, any Confidential Information of the Company. I understand that "***Confidential Information***" means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, business plans, product plans, products, services, customer lists and customers (including, but notlimited to, customers of the Company on whom I called or with whom I became acquainted duringthe term of my Relationship with the Company), market research, works of original authorship, intellectual property (including, but not limited to, unpublished works and undisclosed patents), photographs, negatives, digital images, software, computer programs, ideas, developments, inventions (whether or not patentable), processes, formulas, technology, designs, drawings and engineering, hardware configuration information, forecasts, strategies, marketing, finances or other business information disclosed to me by the Company either directly or indirectly in writing,orally or by drawings or observation or inspection of parts or equipment. I further understand thatConfidential Information does not include any of the foregoing items that has become publicly known and made generally available through no wrongful act of mine or of others who were underconfidentiality obligations as to the item or items involved.

(b) **Other Employer Information**. I agree that I will not, during my Relationship

withthe Company, improperly use or disclose any proprietary information or trade secrets of any formeror concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) **Third Party Information**. I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a dutyon the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

(d) **DTSA Notification**. The misappropriation of trade secrets (a form of Intellectual Property, as defined below) is a violation of law, just like the theft of any property. In addition tostate law remedies, the Defend Trade Secrets Act of 2016 (the "***DTSA***") enables a trade secret owner to bring a trade secret misappropriation case in federal court. The DTSA generally provides that an individual shall not be held criminally or civilly liable under any federal or state trade secret law in the following circumstances: (i) where the individual discloses trade secrets in confidence to a federal, state or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law; or (ii) where the disclosure is made in a sealed filingin a lawsuit or other proceeding. In addition, the DTSA generally permits an individual to disclosetrade secrets to the individual's attorney in the course of pursuing a lawsuit where the person alleges retaliation for reporting a suspected violation of the law (or uses the trade secret information in such lawsuit, if the individual files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order). The foregoing is a verygeneralized summary of the immunity provisions of the DTSA intended to satisfy the notificationrequirements of the DTSA. The DTSA does not preclude the trade secret owner from seeking breach of contract remedies, however. I understand that I should seek legal counsel before disclosing any trade secrets if I intend to seek immunity under the DTSA.

**3. Intellectual Property**

(a) **Assignment of Intellectual Property**. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company,and hereby assign to the Company, or its designee, all my right, title and interest in and to any original works of authorship, domain names, inventions, concepts, improvements, processes, methods or trade secrets, whether or not patentable or registrable under copyright or similar laws,that I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived ordeveloped or reduced to practice, during the period of time I am in the service of the Company (collectively referred to as "***Intellectual Property***") and that (i) are developed using the equipment, supplies, facilities or Confidential Information of the Company, (ii) result from or are suggested by work

performed by me for the Company, or (iii) relate to the Company business or to the actualor demonstrably anticipated research or development of the Company. The Intellectual Property will be the sole and exclusive property of the Company. I further acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of and during the period of my Relationship with the Company and that are protectable by copyright are"works made for hire," as that term is defined in the United States Copyright Act. To the extent any Intellectual Property is not deemed to be work made for hire, then I will and hereby do assign all my right, title and interest in such Intellectual Property to the Company, except as provided inSection 3(e).

(b) **Patent and Copyright Registrations**. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Intellectual Property and any copyrights, patents, trademarks, domain names or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto and the execution of all applications, specifications, oaths, assignments and other instruments that the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company and its successors, assigns and nominees the sole and exclusive right, title and interest in and to such Intellectual Property, and any copyrights, patents, trademarks, domain names or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Intellectual Property Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my assistance in perfecting the rights transferred in this Intellectual Property Agreement, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent and copyright, trademark or domain name registrations thereon with the same legal force and effect as if executedby me. The designation and appointment of the Company and its duly authorized officers and agents as my agent and attorney in fact shall be deemed to be coupled with an interest and thereforeirrevocable.

(c) **Maintenance of Records**. I agree to keep and maintain adequate and current written records of all Intellectual Property made by me (solely or jointly with others) during the term of my Relationship with the Company. The records will be in the form of notes, sketches, drawings, works of original authorship, photographs, negatives or digital images or in any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(d) **Intellectual Property Retained and Licensed**. I provide below a list of all original works of authorship, inventions, developments, improvements, trademarks, designs, domain names, processes, methods and trade secrets that were made by me prior to my Relationship with the Company (collectively referred to as "***Prior Intellectual Property***"), that belong to me, that relate to the Company's proposed business, products or research and development, and that are not assigned to the Company hereunder; or, if no

such list is attached, I represent that there is no such Prior Intellectual Property. If in the course of my Relationship with the Company, I incorporate into Company property any Prior Intellectual Property owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Intellectual Property as part of or in connection with such Company property.

Prior Intellectual Property:

| Titl e | Date | Identifying Numberor Brief Description |
|---|---|---|
| | | |

(e) **Exception to Assignments**. I understand that the provisions of this Intellectual Property Agreement requiring assignment of Intellectual Property to the Company are limited by Section 2870 of the California Labor Code, which is attached hereto as **Appendix A**, and do not apply to any intellectual property that (i) I develop entirely on my own time; and (ii) I develop without using Company equipment, supplies, facilities or trade secret information; and (iii) does not result from any work performed by me for the Company; and (iv) does not relate at the time of conception or reduction to practice to the Company's current or anticipated business, or to its actual or demonstrably anticipated research or development. Any such intellectual property will be owned entirely by me, even if developed by me during the time period in which I am employedby the Company. I will advise the Company promptly in writing of any intellectual property that I believe meets the criteria for exclusion set forth herein and is not otherwise disclosed pursuant to Section 3(d) above.

(f) **Moral Rights**. Any assignment of copyright pursuant to this Agreement includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be knownas or referred to as "moral rights" (collectively, "***Moral Rights***"). To the extent such Moral Rights cannot be assigned under applicable law and to the extent the following is allowed by the laws inthe various countries where Moral Rights exist, I hereby waive such Moral Rights and consents to any such action of the Company that would violate such Moral Rights in the absence of such consent. I will confirm any such waivers and consents from time to time as requested by the Company.

(g) **Return of Company Documents**. I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all works of original authorship, domain names, original registration certificates, photographs, negatives, digital images, devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment or other documents or property, or reproductions of any aforementioned items, developed by me pursuant to my Relationship with the Company or otherwise belonging to the Company or its successors or assigns. In the event of the termination of my Relationship with the Company, I agree to sign and deliver the "***Termination Certificate***" attached hereto as **AppendixB**.

**4. Notification of New Employer**

In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer or consulting client of my rights and obligations under thisIntellectual Property Agreement.

**5. No Solicitation of Employees**

In consideration for my Relationship with the Company and other valuable consideration, receipt of which is hereby acknowledged, I agree that during the period of my Relationship with the Company as an employee, consultant, officer and/or director and for a period of twelve (12) months thereafter, I shall not solicit the employment of any person who shall then be employed by the Company (as an employee or consultant) or who shall have been employed by the Company (as an employee or consultant) within the prior twelve (12) -month period, on behalf of myself or any other person, firm, corporation, association or other entity, directly or indirectly.

**6. Representations**

I represent that my performance of all the terms of this Intellectual Property Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my Relationship with the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith. I agree to execute any proper oath or verify any proper document required to carry out the terms of this Intellectual Property Agreement.

**7. Equitable Relief**

The Company and I each agree that disputes relating to or arising out of a breach of the covenants contained in this Intellectual Property Agreement may cause the Company or me, as applicable, to suffer irreparable harm and to have no adequate remedy at law. In the event of any such breach or default by a party, or any threat of such breach or default, the other party will be entitled to injunctive relief, specific performance and other equitable relief. The parties further agree that no bond or other security shall be required in obtaining such equitable relief and herebyconsents to the issuance of such injunction and to the ordering of specific performance.

**8. General Provisions**

(a) **Governing Law; Consent to Personal Jurisdiction**. This Intellectual Property Agreement will be governed by the laws of the State of California as they apply to contracts enteredinto and wholly to be performed within such state. I hereby expressly consent to the nonexclusive personal jurisdiction and venue of the state and federal courts located in the federal Northern District of California for any lawsuit filed there by either party arising from or relating to this Intellectual Property Agreement.

(b) **Entire Agreement**. This Intellectual Property Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and merges all prior discussions between us. No modification of or amendment to this Intellectual Property Agreement, or any waiver of any rights under this Intellectual Property Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Intellectual Property Agreement.

(c) **Severability**. If one or more of the provisions in this Intellectual Property Agreement are deemed void by law, then the remaining provisions will continue in full force andeffect.

(d) **Successors and Assigns**. This Intellectual Property Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefitof the Company and its successors and assigns.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned has executed this Proprietary Information andInventions Agreement as of Jul 13, 2021.

Signature: Marc Perkins

Printed Name: Marc Perkins

Title:

Date: Jul 13, 2021

Email: Marc.b.perkins@gmail.com

Address: 19 October Hill Road, Woodbridge, CT 06525

[SIGNATURE PAGE TO PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT]

**APPENDIX A**

CALIFORNIA LABOR CODE SECTION 2870

Application of provision that employee shall assign or offer to assign rights in invention toemployer.

(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention tothe employer's business, or actual or demonstrably anticipated research or development of the employer.

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

# APPENDIX B

TERMINATION CERTIFICATE

This is to certify that I do not have in my possession, nor have I failed to return, any and all works of original authorship, domain names, original registration certificates, photographs, negatives, digital images, devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, or other documents or property, or reproductions of any aforementioned items, belonging to ________________________ and its subsidiaries, affiliates, successors or assigns (collectively, the "***Company***").

I further certify that I have complied with all the terms of the Company's Proprietary Information and Inventions Agreement signed by me (the "***Intellectual Property Agreement***"), including the reporting of any Intellectual Property (as defined therein) conceived or made by me(solely or jointly with others) covered by the Intellectual Property Agreement.

I further agree that, in compliance with the Intellectual Property Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, methods, know-how, designs, formulas, developmental or experimental work, computer programs, databases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business ofthe Company or any of its employees, clients, consultants or licensees.

I further agree that for twelve (12) months from this date, I shall not solicit the employment of any person who shall then be employed by the Company (as an employee or consultant) or who shall have been employed by the Company (as an employee or consultant) within the prior twelve
(12) month period, on behalf of myself or any other person, firm, corporation, association or other entity, directly or indirectly, all as provided more fully in the Intellectual Property Agreement.

Dated:

By:___________________________________

Name:_________________________________